## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT F. AND LAURA S. BAUER, et al. ) | |
| ) | |
| Individually and on Behalf of a Class ) | |
| of Similarly Situated Persons, ) | |
| ) | No. 24-287 L |
| Plaintiffs, ) | |
| ) | Judge Matthew H. Solomson |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

---

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION CERTIFY OPT-IN CLASS UNDER RCFC 23

---

**LEWIS RICE, LLC**

Lindsay S.C. Brinton
Meghan S. Largent
Michael Armstrong
T Hunter Brown
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
(314) 444-7723
(314) 612-7723 (fax)
lbrinton@lewisrice.com

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    SUMMARY OF MOTION..................................................................................... 1

       A.     The Named Plaintiffs and putative class members are entitled to
              compensation for the United States' uncompensated taking of their
              property. ................................................................................................... 3

       B.     Class Certification is Appropriate........................................................... 5

III.   ARGUMENT ......................................................................................................... 5

       A.     The Court has the authority to certify a class action in this matter......................... 5

       B.     This action meets all requirements for a certified class action. ............................. 6

              1.     The putative class is so numerous that joinder of all members
                     is impracticable. ........................................................................... 7

              2.     Questions of law or fact are common to the class and
                     predominate over questions affecting individually members.
                     ......................................................................................................... 9

              3.     Claims of the representative parties are typical of the claims
                     of the putative class.................................................................... 11

              4.     The Named Plaintiffs, as representative parties, will fairly
                     and adequately protect the interests of the putative class. ....................... 11

                     a.     Named Plaintiffs and the putative class will be
                            represented by experienced and competent counsel. ............. 12

                     b.     There are no conflicts of interest between putative class
                            members............................................................................. 14

              5.     A class action is superior to other available methods for
                     fairly and efficiently adjudicating the controversy. ................... 14

IV.    CONCLUSION..................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**

*Ambase Corp. v. United States*, 61 Fed. Cl. 794 (2004) ..................................................... 6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 14

*Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006) ......................................... 4, 16

*Barnes v. United States*, 68 Fed. Cl. 492 (2005) ............................................... 6, 7, 11, 15

*Bigelow v. United States*, 97 Fed. Cl. 674 (2011) ............................................... 8, 9, 15

*Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) ......................................... 7, 16

*Brown v. United States*, 126 Fed. Cl. 571 (2016) ................................................... 7, 16

*Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) ..................................... 4, 9

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................. 5

*Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630 (2018) ............ 7

*Curry v. United States,* 81 Fed. Cl. 328 (2008) ...................................................... 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................ 5

*Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462 (2022) ...................... *passim*

*Ellamae Phillips Co. v United States*, 564 F.3d 1367 (Fed. Cir. 2009) ...................... 10

*Fauvergue v. United States*, 98 Fed. Cl. 82 (2009), *rev'd sub nom. on other grounds by
    Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) ............................. 8, 10, 11

*Favreau, II v. United States,* 48 Fed. Cl. 774 (2000) ................................................ 7

*Filosa v. United States*, 70 Fed. Cl. 609 (2006) ................................................ 9, 11

*Fisher v. United States,* 69 Fed. Cl. 193 (2006) ................................................ 9, 11

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ............................ 5, 11

*Geneva Rock Prod., Inc. v. United States*, 100 Fed. Cl. 778 (2011) ............... 10, 15, 16

*Haggart v. United States*, 89 Fed. Cl. 523 (2009) ........................................ 9, 10, 15

*Howard v. United States*, 106 Fed. Cl. 343 (2012) ................................................... 3

*Hubbert v. United States*, 58 Fed. Cl. 613 (2003)........................................................ 10

*King v. United States*, 84 Fed. Cl. 120 (2008) ........................................................ 8, 9

*Macy Elevator, Inc. v. United States*, 105 Fed. Cl. 195 (2012) ................................... 3

*Memmer v. United States*, 150 Fed. Cl. 706 (2020), *aff'd in part and vacated in part on other grounds*, 50 F.4th 136 (Fed Cir. 2022) ........................................ 3

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*")........................... 4, 10

*Preseault v. United States*, 494 U.S. 1 (1990) ("*Preseault I*") .................................. 3, 4

*Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134 (1972) ............................. 6, 12

*Saunooke v. United States*, 8 Cl. Ct. 327 (1985)........................................................ 14

*Singleton v. United States*, 84 Fed. Cl. 120 (2008)............................................... *passim*

*Starr Int'l Co. v. United States*, 109 Fed. Cl. 628 (2013)....................................... 12, 15

*Toscano v. United States*, 98 Fed. Cl. 152 (2011) ........................................................ 8

**Statutes**

28 U.S.C. § 2501 .......................................................................................................... 16

National Trails System Act Amendments of 1983, Pub. L. No. 98-11, 97 Stat. 42, 16 U.S.C. §§ 1241 *et seq* ................................................................................... *passim*

Tucker Act of 1887, ch. 359, 24 Stat 505, 28 U.S.C. § 1491 .............................. 3, 4, 16

Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91-646, 84 Stat 1894, 42 U.S.C. §§ 4601, *et seq*......................................... 4, 5

**Rules**

RCFC 23 ................................................................................................................ *passim*

**Constitutional Provisions**

U.S. CONST. amend V ............................................................................................ *passim*

## I.    INTRODUCTION

Pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"),

certification of a class action is appropriate in this case because:

- The above captioned Named Plaintiffs have been deprived of their property under Section 8(d) of the National Trails System Act Amendments of 1983 (the "Trails Act"), codified at 16 U.S.C. § 1247(d), and are entitled to just compensation for the taking of their land;

- A class of similarly situated individuals or entities who have had their property taken exists;

- Class certification prerequisites have been met and class certification provides the most efficient (and arguably, the only) means of resolving the claims of the Named Plaintiffs and the putative class members.

For these reasons, this Court should grant Plaintiffs' Motion to Certify.

## II.    SUMMARY OF MOTION

The Named Plaintiffs (as listed in the Complaint) each own fee title to property which

underlies or is adjacent to a 62.3 mile segment of rail line near Bedford, Indiana (milepost

00Q251.7), and near New Albany, Indiana (milepost 00Q314.0), located within Clark, Floyd,

Lawrence, Orange, and Washington Counties, Indiana (the "Corridor").  The Corridor was built

by the New Albany & Salem Railroad in the mid-1850s.  Through a series of name changes,

consolidations, purchases, reorganizations, mergers, the Corridor was eventually acquired by CSX

Transportation ("CSXT") in September 1987.  Specific to these Named Plaintiffs and members of

the putative class, CSXT's rights to the Corridor are not in fee but as an easement for railroad

purposes.

In 2009, CSXT petitioned the Surface Transportation Board ("STB") to discontinue service

over the Corridor, which was granted by the STB on April 7, 2010, with service officially

discontinued on May 12, 2010.  Then, on December 19, 2017, CSXT filed a Verified Notice of

Exemption, seeking permission to abandon the Corridor entirely.  (*See* Exhibit 2 to Complaint,

ECF No. 1-2.)  On February 28, 2018, the STB issued a Decision and Notice of Interim Trail Use or Abandonment ("NITU"), invoking section 8(d) of the Trails Act.  (*See* Exhibit 4 to Complaint, ECF No. 1-4.)  Since that time, CSXT's rights to the property have been sold and fully transferred to two trail sponsors:  the City of New Albany and Radius Indiana.[1]

But for the operation of the Trails Act, the Named Plaintiffs (and the putative class members) would have exclusive right to their properties, as CSXT's abandonment of the Corridor would have caused CSXT's railroad easement to extinguish.  The invocation of Section 8(d) and the issuance of the NITU by the STB resulted in an uncompensated taking by the United States, as the reversion of the right to exclusive use of these landowners' properties has been blocked.

The above named Plaintiffs bring this action to seek compensation for the government's taking pursuant to the Fifth Amendment of the Constitution.  The Named Plaintiffs were not the only landowners which suffered an uncompensated taking—hundreds of other landowners in Clark, Floyd, Lawrence, Orange, and Washington Counties, Indiana also had their property taken by the United States without compensation.[2]  The Named Plaintiffs share common issues of law and fact with these landowners along this Corridor.  For this reason, the most efficient and just manner to resolve the government's obligation to compensate these owners is to certify this

---

[1] The original NITU granted the right to negotiate a trail use agreement between CSXT and two separate potential trail sponsors—the Indiana Trails Fund ("Indiana Trails") and the City of New Albany (the "City").  (ECF No. 1-4.)  After several years of extensions for negotiations, the City and Radius Indiana ("Radius") jointly requested that NITU between the CSXT and the City be vacated in favor of a new NITU between CSXT, the City, and Radius.  (ECF No. 1-5).  The STB agreed, vacating the original NITU and granting a new NITU on October 12, 2022.  (ECF No. 1-6.)  CSXT notified the STB that it had entered Purchase and Sale Agreements with both the City (ECF No. 1-7) and Radius. (ECF No. 1-8.)

[2] At this time, Plaintiffs estimate that there are in excess of 300 parcels which have been affected by the NITU and whose owners have never sought just compensation for the United States' taking.

proceeding as an opt-in class-action under Rule 23 of the Court of Federal Claims ("RCFC"), defined to include:

> All persons who, as of February 28, 2018, owned a fee interest in property constituting part of the Corridor which is now occupied or controlled by the City of New Albany and/or Radius Indiana for trail use by virtue of the Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board on February 28, 2018 (as amended on October 12, 2022) and who have damaged by being deprived of their rights to possess, control, and enjoyment of their land pursuant to the STB's NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the Tucker Act.

**A.  The Named Plaintiffs and putative class members are entitled to compensation for the United States' uncompensated taking of their property.**

This Court has had occasion to examine the effect of Indiana law on railroad easements. *See, e.g, Macy Elevator, Inc. v. United States*, 105 Fed. Cl. 195 (2012).  Where a railroad's easement is abandoned or terminated, it reverts back to the fee owner.  *Id*.  *See also Memmer v. United States*, 150 Fed. Cl. 706, 730-32 (2020), *aff'd in part and vacated in part on other grounds*, 50 F.4th 136 (Fed Cir. 2022) (same); *Howard v. United States*, 106 Fed. Cl. 343 (2012) (same). Under Indiana law, Plaintiffs would have had the exclusive right to physical ownership, possession, and use of their property free of the railroad easement upon abandonment of the use of that easement for railroad purposes, but for the Trails Act.

Section 8(d) of the Trails Act provides:

> in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. 1247(d).  The United States Supreme Court in *Preseault v. United States*, 494 U.S. 1 (1990) ("*Preseault I*"), held that Congress possessed the constitutional authority to enact the Trails Act and to take Plaintiffs' property for conversion to a public-access recreational trail and preservation of a railroad easement for a possible future railroad corridor.  Relevant to claims of

these landowners, the Supreme Court in *Preseault I*, and the Federal Circuit sitting en banc in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"), also held that the Fifth Amendment to the United States Constitution requires the United States to pay the property owners for the value of that property taken by operation of Section 8(d) of the Trails Act.

Since that time, the Federal Circuit has more fully developed Trails Act jurisprudence, holding in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), and *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006), that claims for compensation accrue on the date that the STB issued the NITU. Such compensation is due from the federal government, not CSXT. *See Preseault, II*, 100 F.3d at 1531 ("Finally, we conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government").

Put simply: the STB's invocation of Section 8(d) and the issuance of the NITU constitutes a taking of the Named Plaintiffs' property and the property of other similarly situated property owners as defined above, for which the United States has not provided any compensation. The Fifth Amendment of the United States Constitution requires that the federal government compensate the Named Plaintiffs and other similarly situated property owners. U.S. CONST. amend. V. Plaintiffs seek compensation for the taking of their property which, but for operation of the Trails Act, would be theirs to enjoy free of any easement imposed by the Trails Act. Plaintiffs' claim for a taking of their land is brought against the United States Government under the Tucker Act of 1887 and the Fifth Amendment to the United States Constitution, because the taking of their property occurred by reason of the Trails Act.

Further, Plaintiffs seek costs and attorneys' fees incurred pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91-646, 84 Stat 1894, 42 U.S.C. §§ 4601, *et seq.*, which provides that Plaintiffs' are entitled to "reasonable

costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."  42 U.S.C. § 4654(c).

### B.    Class Certification is Appropriate.

The Named Plaintiffs, as representative parties, seek to certify a class action for the putative class of landowners defined above.  Because the Named Plaintiffs and the members of the putative class defined above all have property subject to and affected by the STB's February 28, 2018 NITU, and because each landowner shares common issues of fact and law, this Court should certify this as an opt-in class action under RCFC 23.  A class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Proceeding as an opt-in class action under Rule 23 furthers the interest of justice, judicial economy, and efficiency.  *See* RCFC 23(a)(2).  *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974); *and General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

As discussed below, this matter satisfies each of the specific criteria this Court considers when determining whether to certify a case as an opt-in class action.

### III.    ARGUMENT

### A.    The Court has the authority to certify a class action in this matter.

This Court has the authority to certify a class action at this time.  RCFC 23(c)(1)(A) provides that "[a]t an early time after a person sues as a class representative, the court must determine by order whether to certify the action as a class action."  While class actions operate differently in the Court of Federal Claims than in district courts:

> There is no reason why this court cannot use the [class action], if it is appropriate. So long as relief is confined to a money judgment, there is nothing in the type of jurisdiction we have, or the fact that claims in this court are normally against the

United States, to deprive us of this modern aid to speedier and less repetitious litigation.

*Ambase Corp. v. United States*, 61 Fed. Cl. 794, 800 (2004) (quoting *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 137 (1972)).  *See also Barnes v. United States*, 68 Fed. Cl. 492, 502 (2005) ("If the proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so now.")

      **B.    This action meets all requirements for a certified class action.**

RCFC 23 provides the basic requirements for bringing and maintaining a class action in this Court:

  (a) **Prerequisites**. One or more members of a class may sue as representative parties on behalf of all members only if:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

  (b) **Class Actions Maintainable**. A class action may be maintained if RCFC 23(a) is satisfied and if: . . .

    (2) the United States has acted or refused to act on grounds generally applicable to the class; and

    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

      (A) the class members' interests in individually controlling the prosecution of separate actions;

      (B) the extent and nature of any litigation concerning the controversy already begun by class members; [] and

      (D) the likely difficulties in managing a class action.

6

RCFC 23(a)-(b).  As discussed in a recent decision by the Honorable Eleni M. Roumel, plaintiffs seeking class certification must demonstrate five things to satisfy RCFC 23(a) and (b): (i) numerosity, (ii) commonality, (iii) typicality, (iv) adequacy, and (v) superiority.  *Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462, 467 (2022) (citing *Bright v. United States*, 603 F.3d 1273, 1278 n.2 (Fed. Cir. 2010).  The plaintiff, as the party seeking class certification, has the burden of establishing each of these elements.  *Id.* (citing *Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630, 637 (2018)).  As shown below, this matter satisfies each of these requirements.

### 1. The putative class is so numerous that joinder of all members is impracticable.

The first of the requirements under RCFC 23(a) is numerosity.  This Court has wide discretion to determine whether the numerosity requirement is met based on the facts of the case.  *Favreau, II v. United States,* 48 Fed. Cl. 774, 776-77 (2000).  A successful class must be "so numerous that joinder of all members is impracticable," RCFC 23(a)(1).  However, impracticable does not mean "impossible."  *Barnes*, 68 Fed. Cl. at 495.  Whether joinder is impracticable requires consideration of "the number of potential class members, the geographic dispersal of the potential class members, and the size of each potential class member's claim," *Common Ground Healthcare*, 137 Fed. Cl. at 638, the most important factor tends to be the size of the class.  *Id*.

As noted by Judge Roumel, this Court has held that as few as 23 potential class members satisfied the requirements of numerosity, and that a "demonstration of hundreds of potential class members standing alone is sufficient to satisfy the numerosity requirement."  *Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 467 (internal quotations removed) (quoting *Common Ground Healthcare*, 137 Fed. Cl. at 638); *Brown v. United States*, 126 Fed. Cl. 571, 578 n.3 (2016) (collecting cases).  As noted above, Plaintiffs estimate that there are likely in excess of 300 parcels of land which have

been affected by the government's taking across the Corridor, such that the size of the class, on its own, is sufficient to satisfy numerosity.

As to location, the NITU affected a 62.3 mile long Corridor, across five counties in Indiana: Clark, Floyd, Lawrence, Orange, and Washington. This is similarly to the matter of *Singleton v. United States*, a Trails Act matter involving more than 100 claimants across three counties in Missouri, which the Honorable Edward J. Damich ruled satisfied numerosity. 92 Fed. Cl. 78, 82-84 (2010). *See also Toscano v. United States*, 98 Fed. Cl. 152, 155-56 (2011) (800 potential claimants across two counties in Utah.)

Whether the size of individual claims is such that class members might be discouraged from pursuing their claims is also considered when evaluating numerosity. *King v. United States*, 84 Fed. Cl. 120, 125 (2008). The time and financial commitment necessary to bring an action can often be outweighed by potential recovery, such that a class action may be the only means to make litigation possible. *Fauvergue v. United States*, 98 Fed. Cl. 82, 97 (2009), *rev'd sub nom. on other grounds by Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010). Trails Act cases often include situations where small claims might not be possible given the costs of litigation. *Bigelow v. United States*, 97 Fed. Cl. 674, 677 (2011). In this matter, certain putative claims represent fairly small takings (less than a thousand square feet), such that litigation costs would greatly exceed the value of the claim.[3]

For these reasons, numerosity is met.

---

[3] Plaintiffs estimate that approximately 10% of the claims are less than 1,000 square feet, and approximately 40% are less than 0.1 acres, with the average claim less than one-third of an acre.

**2. Questions of law or fact are common to the class and predominate over questions affecting individually members.**

Commonality requires three separate inquiries:

(a)  whether there are questions of law or fact common to the class;

(b)  whether the United States acted or refused to act on grounds generally applicable to the class; and

(c)  whether those common questions predominate over any questions affecting only individual members.

*Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 468 (quoting *Filosa v. United States*, 70 Fed. Cl. 609, 617 (2006)) (internal quotations removed).  *See also* RCFC 23(a)(2), 23(b)(2), 23(b)(3).  Commonalty does not require identical claims but only that "questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case." *Haggart v. United States*, 89 Fed. Cl. 523, 532 (2009).  Courts have noted that "[t]he threshold for proving commonality 'is not that high.' " *Id.* (quoting *King*, 84 Fed. Cl. at 125).  In fact, commonality is satisfied when there is at least one "core common legal question that is likely to have one common defense," which when resolved, will affect at least a significant number of class individuals. *King*, 84 Fed. Cl. at 125-26.

In Trails Act matters, the Honorable Charles F. Lettow perhaps summarized the commonality requirement the best:

> There can be little question that the government acted on grounds applicable to the entire class in this case. The NITU was a single act that affected all putative class members. *See Singleton,* 92 Fed. Cl. at 84; *see also Caldwell v. United States,* 391 F.3d 1226, 1233 (Fed. Cir. 2004) ("The issuance of the NITU is the only government action in the railbanking process.").  This single act is the wellspring of all the putative class members' claims.  A class shares a common question of law or fact "when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fisher v. United States,* 69 Fed. Cl. 193, 200 (2006) (citing *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir. 1993)).  Here, that issue is whether the NITU . . . effected a taking of the class members' property. *See, e.g., Bigelow,* 97 Fed. Cl. at 678.

*Geneva Rock Prod., Inc. v. United States*, 100 Fed. Cl. 778, 788–89 (2011).  Other than the specifics of the NITU, little is different in this matter from *Geneva Rock*.  Here, the underlying legal issue is whether the property rights of these Indiana landowners were taken when the federal government, through the STB, issued the NITU on February 28, 2018.  Facts arising from the issuance of the NITU are thus common to the class—a single act by the United States, resulting in an uncompensated taking.  In fact, the "predominate question applicable to all putative plaintiffs is whether the Government committed a taking by blocking their reversionary interests in the property." *Fauvergue*, 86 Fed. Cl. at 100.[4]  While the amount of compensation owed to each landowner will vary and require individualized proof, difference in damages are not sufficient to prevent class certification.  *Id*.; *Haggart*, 89 Fed. Cl. at 533-34.

   Commonality is established.

---

  [4] Put a different way, the Federal Circuit has held that liability in Trails Act takings turns upon three questions:

  (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;

  (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and

  (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips Co. v United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault II*, 100 F.3d at 1533).  Each of the Named Plaintiffs and each of the putative class members share these same issues in common.  While there are perhaps questions as to the specific nature of how CSXT came to obtain particular portions of the Corridor, that is a question of liability and need not be addressed at the point of class certification.  *Geneva Rock*, 100 Fed. Cl. at 789 (quoting *Singleton*, 92 Fed. Cl. at 85 ("[T]he nature of [the railroad's] interest in the right-of-way is more of an ultimate issue in this litigation and less indicative of whether the named [p]laintiffs' claims are typical of the class."); *Hubbert v. United States*, 58 Fed. Cl. 613 (2003) (specific conveyances to be considered during merits portion of proceeding).

3.  **Claims of the representative parties are typical of the claims of the putative class.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  RCFC 23(a)(3).  As with commonality, the threshold for typicality "is not high."  *Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 468 (quoting *Filosa*, 70 Fed. Cl. at 620)).[5]

> Even if some factual differences exist between the claims of the named representatives, plaintiffs can successfully establish typicality by showing that the named representatives' claims share the same essential characteristics as the claims of the class at large.

*Fauvergue*, 86 Fed. Cl. at 100 (cleaned up) (quoting *Curry v. United States,* 81 Fed. Cl. 328, 335 (2008) (*quoting Fisher,* 69 Fed. Cl. at 200)).  Here, the claims will turn on whether the issuance of the NITU by the STB constituted a taking under the Fifth Amendment of the United States Constitution.  The Named Plaintiffs and the putative class members each bring claims premised upon this common legal theory.  Moreover, each of the named Plaintiffs and putative class members own fee simple title to property which underlies or is adjacent to the Corridor.

Typicality is established.

4.  **The Named Plaintiffs, as representative parties, will fairly and adequately protect the interests of the putative class.**

The fourth requirement under RCFC 23 requires the Court to examine whether "the representative parties will fairly and adequately protect the interests of the class."  RCFC 23(a)(4).  This is a two-part inquiry as to whether class counsel will fairly and adequately represent the

---

[5] Commonality and typicality tend to rise and fall together, since "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Barne*s, 68 Fed. Cl. at 498 (quoting *Gen. Tel. Co. of Southwest*, 457 U.S. at 157 n. 13).

putative class and whether class members have conflicting interests. *Elec. Welfare Tr. Fund*, 160

Fed. Cl. at 468-69, citing *Starr Int'l Co. v. United States*, 109 Fed. Cl. 628, 635 (2013)).

> a. Named Plaintiffs and the putative class will be represented by experienced and competent counsel.

"[C]ounsel must be qualified, experienced, and generally able to conduct the proposed

litigation" in order for this criterion to be satisfied. *Quinault,* 453 F.2d at 1276.  To certify a class,

the Court must appoint class counsel and in doing so, must consider:

> (i)   the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv)  the resources that counsel will commit to representing the class;

RCFC 23(g)(1)(A), and may consider "any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class."  RCFC 23(g)(1)(B).

Lewis Rice, LLC ("Lewis Rice") has several attorneys dedicated to this litigation and very

easily satisfies the requirements of RCFC 23.

> 1) Linsday S.C. Brinton is a member of Lewis Rice with seventeen (17) years of experience, with the vast majority of her work in Trails Act takings before this Court, having served as lead counsel in more than seventy (70) Trails Act matters. Ms. Brinton has represented clients before this Court, the United States Court of Appeals for the Federal Circuit, the Supreme Court for the United States, and several state supreme courts.
>
> 2) Meghan S. Largent is a member of Lewis Rice with eighteen (18) years of experience with the vast majority of her work in Trails Act takings before this Court, having served as lead counsel in more than sixty (60) Trails Act matters. In addition to her Trails Act works, Ms. Largent handles general commercial litigation matters, products liability, and toxic tort cases, and state and local eminent domain matters.  Prior to her litigation practice, she clerked for the Honorable Sue E. Myerscough on the Illinois Court of Appeals for the Fourth Circuit.  Ms. Largent has represented clients before this Court, several United States District Courts, the United States Court of Appeals for the Federal Circuit, and the United States Tax Court.

3) Michael Armstrong is a member of Lewis Rice with eleven (11) years of experience representing clients in general and commercial litigation, land use, eminent domain, product liability, professional licensing, general appellate practice, and intellectual property, as well as work in Trails Act takings cases before this Court. Additionally, Mr. Armstrong has worked on several class action matters in various practice areas, including several nationwide matters. Prior to beginning at Lewis Rice, Mr. Armstrong clerked for the Honorable Michael J. Reagan for the United States District Court for the Southern District of Illinois. Mr. Armstrong is admitted to practice before the United States Patent and Trademark Office, and has represented clients before this Court, several United States District Courts, and the United States Court of Appeals for the Federal Circuit.

4) T. Hunter Brown is an associate at Lewis Rice with seven (7) years of experience representing clients in commercial litigation and intellectual property litigation, securities arbitrations before the Financial Industry Regulation Authority as well as Trails Act takings cases before this Court. Prior to beginning at Lewis Rice, Mr. Brown clerked for the Honorable D. Price Marshall Jr. for the United States District Court for the Eastern District of Arkansas and the Honorable Lavenski R. Smith for the Eighth Circuit Court of Appeals.

Lewis Rice is a law firm with more than 100 attorneys, has an extensive support staff, and has exceptional experience in a wide array of practice areas, serving clients across the United States and overseas. In addition to being one of the nation's foremost firms in Trails Act litigation, Lewis Rice has extensive experience in both federal and state class action litigation.

Lewis Rice and undersigned counsel have specific experience with regard to the NITU at issue in this matter having represented clients in *Cessna v. United States*, 18-cv-4372;[6] *Popp v. United States*, 19-cv-0358; *Lawrence County Farm Supply v. United States*, 22-cv-0092; and *Kay v. United States*, 22-cv-1657. As a result, Lewis Rice has already conducted significant research to determine the identity and number of property owners that are likely entitled to make claims for

---

[6] Prior to working at Lewis Rice, Ms. Brinton and Ms. Largent represented clients in *Alexander v. United States*, 18-cv-0437; a subset of these clients became the *Cessna* subcase.

compensation related to the February 28, 2018 NITU, and have researched land title records and conducted GIS mapping of the Corridor.

              b.    There are no conflicts of interest between putative class members.

Adequacy also requires that there must be no significant conflicts between the named plaintiffs and the potential class members. *See Saunooke v. United States*, 8 Cl. Ct. 327, 333 (1985). This inquiry overlaps significantly with both commonality and typicality. *Singleton*, 92 Fed. Cl. at 85 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 n.20 (1997)). Where the class representatives do not possess competing interests, but rather, possess the same interest and objective and suffer the same injury as the class members, there is no conflict between class representatives and class members. *See, e.g.*, *Amchem,* 521 U.S. at 623-24. Each Named Plaintiff seeks the same objective as the class members: to recover "just compensation" for property taken from them by the United States Government. There is no conflict of interest among class members.

Therefore, because Plaintiffs are represented by adequate counsel, and the named Plaintiffs do not have any conflicts of interest with class members, the Plaintiffs will fairly and adequately protect the interests of the class.

Adequacy has been established.

      **5. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.**

The fifth requirement is that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). This includes an examination of:

(A) the class members' interests in individually controlling the prosecution of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by class members; [] and

(D) the likely difficulties in managing a class action.

*Id.* This analysis can be fairly straightforward:

> Essentially, under this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." Since Defendant's liability turns on the same legal question for all proposed class members, "resolution of the predominant legal issue in one action is superior for fairly and efficiently adjudicating this case."

*Elec. Welfare Tr. Fund*, 160 Fed. Cl. at 469 (quoting *Barnes*, 68 Fed. Cl. at 499; *Singleton*, 92 Fed.

Cl. at 86). This Court has demonstrated on multiple occasions that there are considerable benefits

to resolving a large number of Trails Act claims in a single case:

> The benefits presented by the class action in this particular case are similar to those recognized in other rails-to-trails cases. A class action here would resolve numerous claims in a single action, sparing the litigants the time and expense of multiple trials. *See Haggart*, 89 Fed. Cl. at 535. It would encourage efficiencies in common title research, property appraisals, and experts. *Singleton,* 92 Fed. Cl. at 86. Furthermore, the court is not likely to encounter any difficulty in managing the action. The putative class members are readily identifiable and must affirmatively opt into the class. *See id.* "[P]rocedural fairness would not be compromised by class certification because notice to potential class members can be provided relatively easily; all proposed class members are owners of property situated along a defined right-of-way." *Haggart*, 89 Fed. Cl. at 536.

*Geneva Rock*, 100 Fed. Cl. at 791.

> Here, as in the cases above, the "cost/benefit analysis" referenced above

> tips decidedly in favor of class certification. Litigating the remaining claims of the putative class members in one action will achieve economies of scale in time, effort and expense because all plaintiffs within each class are affected by the same government action[.]

*Starr*, 109 Fed. Cl. at 636 (quoting *Bigelow*, 97 Fed. Cl. at 678). The "same government action"

in this case is the February 28, 2018 NITU issued by the STB. In a single action, these claims can

be entirely resolved, and as in *Geneva Rock*, Plaintiffs cannot contemplate any difficulties in managing a class action.[7]

Plaintiffs recognize that claims involving this NITU have preceded this matter, <u>without</u> use of RCFC 23, suggesting that this case <u>could</u> proceed through joinder rather than as a class action, as has been argued in matters like *Brown*. 126 Fed. Cl. at 587-88 (superiority not demonstrated). However, Plaintiffs note that unlike in *Brown*, the Tucker Act's six-year statute of limitations in this case runs on February 28, 2024, prior to any resolution of this Motion. *Barclay*, 443 F.3d at 1378 ("In summary, we adhere to *Caldwell* and hold that the issuance of the original NITU triggers the accrual of the cause of action."); 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.")

With the exception of the publication of the NITU in the Federal Register six years ago, these landowners have received no "actual notice" of the United States' uncompensated taking. This action preserves these landowner's rights. Pursuant to the Federal Circuit's decision in *Bright,* where, as here,

- at least one named Plaintiff has filed a class action complaint prior to the six-year statute of limitations;
- class certification is sought prior to the expiration of the statute of limitations, i.e., prior to February 28, 2024; and
- the Complaint is not amended to add additional named plaintiffs as putative class members after the expiration of the statute of limitations;

then all putative class members claims are preserved and the statute of limitations is tolled. 603 F.3d at 1281-91. Upon granting class certification, these landowners would receive notice from

---

[7] Plaintiffs also note that none of the putative class members have initiated any other litigation. However, Plaintiffs do anticipate a companion action filed pursuant to the Little Tucker Act in the United States District Court for the Southern District of Illinois as to claims less than $10,000.

16

the Court and <u>have the option</u> to opt-into a class certified by the Court.  RCFC 23(c)(2).  Should this Court instead deny certification on the grounds that joinder is possible (and thus a class action is not superior), then tolling ceases, and any landowners not previously listed as Named Plaintiffs would have a matter of days to join this matter before the statute of limitations runs and bars their claims forever.  This small window would expire without these landowners receiving any notice, as the denial of class certification does not result in any notice to former putative class members.  Given this, Plaintiffs argue that a class action is superior to joinder, as it is the <u>only</u> means to provide these putative class members the chance to be compensated for the United States' taking.

Managing these claims as a single class action creates numerous efficiencies—a single counsel for all landowners (limiting attorneys' fees and costs); all title research and appraisals conducted through common experts; and a single judge to adjudicate all claims.  For each of these reasons, pursuing this matter as an opt-in class action is superior to any other means of adjudicating these claims.

## IV.     CONCLUSION

For the reasons stated herein, and in the underlying Class Action Complaint, this Court should issue an Order certifying the class and allow Plaintiffs and the putative class members to jointly seek compensation from the United States for the taking of their property in contravention of the Fifth Amendment of the United States Constitution.  The Court should additionally appoint undersigned counsel as class counsel.

Dated: February 23, 2024          Respectfully submitted,

**LEWIS RICE, LLC**

*/s/ Lindsay S.C. Brinton*
   Lindsay S.C. Brinton
   Meghan S. Largent
   Michael Armstrong
   T Hunter Brown
   Lewis Rice LLC
   600 Washington Avenue, Suite 2500
   St. Louis, Missouri 63101
   (314) 444-7723
   (314) 612-7723 (fax)
   lbrinton@lewisrice.com

   ***Attorneys for Plaintiffs***