# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT F. AND LAURA S. BAUER, | ) |
| | ) |
| RICHARD KENT COMPTON AND DEBORAH L. SULLIVAN, | ) ) ) |
| | ) |
| WILLIAM J. AND SUSAN E. DUNCAN, | ) |
| | ) |
| DWR FARM, LLC. | ) |
| | ) |
| CARINA HOOFNEL AND JOHNNY HOOFNEL, | ) ) ) |
| | ) |
| DAVID AND BRENDA L. HYPES, | ) |
| | ) |
| JOHN AND ROSANNE QUATROKE TRUST, | ) ) |
| | )   No. 24-287 L |
| MARSHALL D. AND SONJA MITCHELL, | )   Judge Stephen S. Schwartz |
| | ) |
| MUDDY FORK OF SILVER CREEK WATERSHED CONSERVANCY DISTRICT, | ) ) ) |
| | ) |
| JERRY L. REYNOLDS, | ) |
| | ) |
| MARK W. SCHLEICHER, | ) |
| | ) |
| MERLYN H. SCHLEICHER, JOHN K SCHLEICHER, STEPHEN O. SCHLEICHER, AND, MARK W. SCHLEICHER | ) ) ) ) |
| | ) |
| JAMES W. STULL, AND | ) |
| | ) |
| ANNA M. WHALEN, | ) |
| | ) |
| JESSE BALLEW, | ) |
| | ) |
| STACY L. BROWN, | ) |
| | ) |
| KATHERINE A. AND WALTER J. ENGEL, III, | ) ) ) |
| | ) |
| JOSHUA A. HEEKE, | ) |
| | ) |
| PATTY HARTLEY HINKEBEIN, | ) |

- 1 -

| | |
|---|---|
| CLIFSONJA THOMPSON, | ) |
| | ) |
| PHILLIP R. AND DEBRA FEELER, | ) |
| | ) |
| PHILLIP TONY GRIFFITH, | ) |
| | ) |
| KEVIN A. AND REBECCA DURBIN, | ) |
| | ) |
| ICS INDIANA HOLDINGS, LLC, | ) |
| | ) |
| MICHAEL D. AND JUDY L. PUGH, | ) |
| | ) |
| SULLIVAN POULTRY, INC., | ) |
| | ) |
| CLAIR SULLIVAN, JR., | ) |
| | ) |
| Individually and on Behalf of a Class of Similarly Situated Persons, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

COME NOW the above-named Plaintiffs ("Plaintiffs" or "Named Plaintiffs"), by and through undersigned counsel, and as representative parties for their First Amended Class Action Complaint against the Defendant United States of America (the "United States"), allege and state as follows:

---

[1] Plaintiffs file this Second Amended Complaint pursuant to RCFC 15(a)(2).

- 2 -

**JURISDICTION**

1. As discussed herein, this Court has jurisdiction pursuant to the Tucker Act of 1887, (March 3, 1887, ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) as this action presents civil claims against the United States founded upon both the Constitution and one or more Acts of Congress.

2. Rule 23 of the Rules for the Court of Federal Claims ("RCFC") provides that, "One or more members of a class may sue as representative parties on behalf of all members . . . ." The above-named Plaintiffs bring this action individually as representative parties and on behalf of other similarly situated landowners who had property by the United States without compensation as discussed herein and in the contemporaneously filed Motion to Certify.

**UNDERLYING STATUTORY AND CONSTITUTIONAL PROVISIONS**

3. The Named Plaintiffs' claims are based upon:

   a. The Fifth Amendment to the United States Constitution, which provides, "No person shall … be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."  U.S. CONST. amend. V;

   b. The National Trail Systems Act Amendments of 1983, 16 U.S.C. §§ 1241, *et seq*. (the "Trails Act") and specifically 16 U.S.C. § 1247(d) ("Section 8(d)"), which provides, "interim use [of abandoned railroad right-of-way easements for public recreation] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

   c. The Tucker Act of 1887, which provides "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon the Constitution," 28 U.S.C. § 1491(a); and

d.  The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91-646, 84 Stat 1894, 42 U.S.C. §§ 4601, *et seq*. (the "URA"), which requires the federal government to reimburse these owners the "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding." 42 U.S.C. § 4654(c).

**STATEMENT OF FACTS RELEVANT TO ALL COUNTS**

4.  On December 18, 2009, CSX Transportation ("CSXT") filed a Petition for Exemption with the federal Surface Transportation Board ("STB") to discontinue service over a 62.3-mile segment of rail near Bedford, milepost 00Q 251.7, and near New Albany, milepost 00Q 314.0 (the "Corridor"). *See CSX Transportation, Inc. – Discontinuation of Service Exemption – In Clark, Floyd, Lawrence, Orange & Washington Cntys., IN*, STB Docket No. AB-55 (Sub-No. 698X) (the "*Discontinuance Docket*") (Doc. No. 226188) (STB Dec. 18, 2009).

5.  On April 7, 2010, the STB granted CSXT's Petition for Exemption, pursuant to 49 U.S.C. § 10502. *Discontinuance Docket*, (Doc. No. 40487) (STB Apr. 7, 2010).

6.  CSXT alerted the STB on May 13, 2010 that it had consummated the discontinuance of service over the Corridor as of May 12, 2010. *Discontinuance Docket*, (Doc. No. 227066) (STB May 13, 2010).

7.  Seven years later, on December 18, 2017, and in anticipation of filing its Verified Notice of Exemption, this time to abandon the Corridor entirely, filed a Combined Environmental and Historic Report. *See CSX Transportation, Inc. – Abandonment Exemption – In Clark, Floyd, Lawrence, Orange & Washington Cntys., Ind.*, STB Docket No. AB-55 (Sub-No. 775X) (the "*Abandonment Docket*") (Doc. No. 244947) (STB Dec. 18, 2017), attached hereto as **Exhibit 1**.

8. The Combined Environmental and Historic Report explains the history of CSXT's acquisition of its rail line in Clark, Floyd, Lawrence, Orange, and Washington Counties, Indiana, particularly with respect Corridor. *See id.* The line was originally built by the New Albany & Salem Railroad and opened in 1854. *Id.* The line went through a series of mergers and name changes and was eventually acquired by CSXT in 1987. *Id.*

9. Having been granted authority to discontinue service over the Corridor, CSXT notified the STB that "No traffic has moved over the [Corridor] in more than two years" and upon the STB's approval, "CSXT will consummate the abandonment and abandon the Line." *Id.*

10. The next day, on December 19, 2017, CSXT filed a Verified Notice of Exemption to abandon the right-of-way. *Abandonment Docket*, (Doc. No. 244875) (STB Dec. 19, 2017), attached hereto as **Exhibit 2**.

11. On December 22, 2017 (docketed Dec. 29, 2017), the Indiana Trails Fund, Inc. ("Indiana Trails") wrote a letter to the STB requesting a Notice of Interim Trail Use for the Corridor. *Abandonment Docket*, (Doc. No. 244875) (STB Dec. 19, 2017), Indiana Trails also included a Statement of Willingness to Assume Financial Responsibility, as required by 49 CFR § 1152.29. *Id.*

12. In response to the Indiana Trails letter, CSXT notified the STB by letter dated January 4, 2018 that it "agrees to negotiate with Indiana Trails toward a possible interim trail use/rail banking arrangement for the Line." *Abandonment Docket*, (Doc. No. 244927) (STB Jan 4, 2018).

13. On January 17, 2018, the City of New Albany (the "City" also wrote a letter to the STB requesting a Notice of Interim Trail Use for the right-of-way. *Abandonment Docket*, (Doc.

No. 244994) (STB Jan. 17, 2018), attached hereto as **Exhibit 3**.  The City also included a Statement of Willingness to Assume Financial Responsibility, as required by 49 CFR § 1152.29.  *Id.*

14. On that same day, CSXT notified the STB that it "intends to negotiate with both [Indiana Trails and the City]" for interim trail use/rail banking.  *Abandonment Docket*, (Doc. No. 244997) (STB Jan. 17, 2018).

15. Under the terms of the easements that created this right-of-way and Indiana law, CSXT had no right to transfer or sell an interest in these owners' land to either the Indiana Trails Fund or the City of New Albany.  See *East Alabama Ry. Co. v. Doe*, 114 U.S. 340, 354 (1885) ("The grant to the 'assigns' of the [railroad] corporation cannot be construed as extending to any assigns except one who should be the assignee of its franchise to establish and run a railroad.").

16. On February 27, 2018 (served February 28, 2018), the STB issued a Decision and Notice of Interim Trail Use or Abandonment ("NITU"), invoking section 8(d) of the Trails Act.  *Abandonment Docket*, (Doc. No. 46275) (STB Feb. 28, 2018), attached hereto as **Exhibit 4**.

17. In the NITU, the STB stated:

Because the Indiana Trails [and the City's] requests comply with the requirements of 49 C.F.R. § 1152.29 and CSXT is willing to negotiate for trail use, a NITU will be issued.  The parties may negotiate an agreement for the [Corridor] during the 180-day period prescribed below.  If an interim trail use agreement is reached (and thus, interim trail use is established) the relevant parties shall jointly notify the Board within 10 days that an agreement has been reached.  49 C.F.R. § 1152.29(d)(2) and (h).  If no agreement is reached within 180 days, CSXT may fully abandon the Line.  49 C.F.R. § 1152.29(d)(1).  Use of the [Corridor] for trail purposes is subject to possible future reconstruction and reactivation of the [Corridor] for rail service.

*Id*. at 3.  The NITU provided that the negotiation period expired on August 27, 2018.  *Id.*

18. The STB granted several extensions to the negotiation period.  *See, e.g.*, *Abandonment Docket*, (Doc. No. 46851) (STB Aug. 24, 2018); (Doc. No. 46844) (STB Feb. 22,

2019);  (Doc. No. 46846) (STB Feb. 22, 2019);  (Doc. No. 47168) (STB Aug. 28, 2019);  (Doc. 50144) (STB Feb 18, 2020); (Doc 50644) (STB Feb. 17, 2021); (Doc 50645) (STB Feb. 17, 2021).

19. On February 17, 2022, the STB issued one further extension to February 18, 2023, but noted that further extension would "require a showing of extraordinary circumstances." *Abandonment Docket*, (Doc. 51102) (STB Feb. 17, 2022).

20. On August 26, 2022, the City and Radius Indiana ("Radius") jointly requested that the NITU issued by the STB between CSXT and the City on February 28, 2020, be vacated in favor separate NITUs for the City and New Albany for interconnected portions of the Corridor. *Abandonment Docket*, (Doc. No. 305197) (STB Aug. 26, 2022), attached hereto as **Exhibit 5**. The City and Radius also included Statements of Willingness to Assume Financial Responsibility, as required by 49 CFR § 1152.29. *Id.*

21. On August 30, 2022, CSXT agreed to negotiate with the City and Radius, noting for the record that it had not consummated abandonment of the Corridor. *Abandonment Docket*, (Doc. No. 305203) (STB Aug. 30, 2022).

22. On October 12, 2022, the STB vacated the prior NITU to the City and issued a replacement NITU as to the City and Radius, permitting negotiation for a trail use agreement through February 18, 2023. *Abandonment Docket*, (Doc. No. 51424) (STB Oct. 12, 2022), attached hereto as **Exhibit 6**.

23. In separate letters dated February 13, 2023, CSXT notified the STB that it had entered Purchase and Sale Agreements as to all of the 62.3 miles of the Corridor, and specifically:

    a. As to 4.5 miles of the Corridor with the City, *Abandonment Docket*, (Doc. No. 306140) (STB Feb. 13, 2023), attached hereto as **Exhibit 7**; and

      b. As to 57.8 miles of the Corridor with Radius. *Abandonment Docket*, (Doc. No. 306141) (STB Feb. 13, 2023), attached hereto as **Exhibit 8.**

## RELEVANT CASE LAW

24. Section 8(d) of the Trails provides, "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

25. The United States Supreme Court in *Preseault v. United States*, 494 U.S. 1 (1990) ("*Preseault I*"), held that Congress possessed the constitutional authority to enact the Trails Act and to take Plaintiffs' property for conversion to a public-access recreational trail and preservation of a railroad easement for a possible future railroad corridor.

26. However, the Supreme Court in *Preseault I*, and the Federal Circuit sitting en banc in *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"), held that the Fifth Amendment to the United States Constitution requires the United States to pay the property owners for the value of that property taken by operation of Section 8(d) of the Trails Act.

27. The Federal Circuit *in Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004), and *Barclay v. United States*, 443 F.3d 1368 (2006), held that claims for compensation arise upon the date that the Surface Transportation Board issued the NITU.

28. Under Indiana law, Plaintiffs would have had the exclusive right to physical ownership, possession, and use of their property free of the railroad easement upon abandonment of the use of that easement for railroad purposes.

29. Creating a public-access recreational trail across Plaintiffs' property and appropriating a new easement for possible future railroad use has taken from Plaintiffs the value of the land physically appropriated for this trail corridor and greatly diminished the value of the Plaintiffs' property adjoining this trail corridor.

30. Compensation for this taking is due from the federal government, not CSXT. *See Preseault, II*, 100 F.3d at 1531 ("Finally, we conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government").

## THE PARTIES

31. **Plaintiffs Robert F. and Laura S. Bauer** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

32. **Plaintiffs Richard Kent Compton and Deborah L. Sullivan** owned land in Orange County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

33. **Plaintiffs William J. and Susan E. Duncan** owned land in Lawrence County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

34. **Plaintiff DWR Farm, LLC.** owned land adjacent in Orange County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

35. **Plaintiffs Carina Hoofnel and Johnny Hoofnel** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

36. **Plaintiffs David and Brenda L. Hypes** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

37. **Plaintiff John and Rosanne Quatroke Trust** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

38. **Plaintiffs Marshall D. and Sonja Mitchell** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

39. **Plaintiff Muddy Fork of Silver Creek Watershed Conservancy District** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

40. **Plaintiff Jerry L. Reynolds** owned land in Lawrence County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

41. **Plaintiff Mark W. Scheicher** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

42. **Plaintiffs Merlyn H. Schleicher, John K. Schleicher, Stephen O. Schleicher, and Mark W. Schleicher** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

43. **Plaintiff James W. Stull** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

44. **Plaintiff Anna M. Whalen** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

45. **Plaintiff Jesse Ballew** owned land in Floyd County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

46. **Plaintiff Stacy L. Brown** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

47. **Plaintiff Katherine A. and Walter Engel, III** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

48. **Plaintiff Joshua A. Heeke** owned land in Floyd County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

49. **Plaintiff Patty Hartley Hinkebein** owned land in Floyd County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

50. **Plaintiff Clifsonja Thompson** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

51. **Plaintiff Phillip R. and Debra Feeler** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

52. **Plaintiff Phillip Tony Griffith** owned land in Clark County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

53. **Plaintiff Kevin A. and Rebecca Durbin** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

54. **Plaintiff ICS Indiana Holdings, LLC.** owned land in Orange County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

55. **Plaintiff Michael D. and Judy L. Pugh** owned land in Lawrence County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

56. **Plaintiff Sullivan Poultry, Inc.** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

57. **Plaintiff Clair Sullivan, Jr.** owned land in Washington County, Indiana adjacent to and underlying the CSXT Corridor on February 28, 2018.

58. The **United States of America** is the Defendant in this matter. The NITU issued by the STB on February 28, 2023 caused a taking of the Named Plaintiffs' land for a public recreational trail and railbanking.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs restate and reincorporates the allegations of Paragraph 1 through 58.

60. As discussed herein and in their Motion for Class Certification and the accompany memorandum in support (which are incorporated herein by reference), Plaintiffs request that this action be certified as a representative class action pursuant to RCFC 23, and that Plaintiffs be named as class representatives on behalf of similarly situated landowners in Clark, Floyd, Lawrence, Orange, and Washington Counties, Indiana.

61. This action satisfies the procedural requirements of RCFC 23, as:

   a. the class is so numerous that joinder of all members is impracticable;

   b. there are questions of law or fact common to the class;

   c. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

   d. the Plaintiffs, as representative parties, along with undersigned counsel, will fairly and adequately protect the interests of the class; and

   e. a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CAUSES OF ACTION

> **COUNT I**
> An action for "Just Compensation" under the Fifth Amendment
> to the United States Constitution; the Trails Act, 16 U.S.C. § 1247(d); and
> the Tucker Act, 28 U.S.C. § 1491(a)

62. Plaintiffs restate and reincorporates the allegations of Paragraph 1 through 61.

63. On February 28, 2018, Plaintiffs owned the land adjacent to the relevant portions of the Corridor in fee.

64. As to the land at issue in this matter, CSXT's interests were limited to an easement for railroad purposes.

65. The STB issued a NITU on February 28, 2018, invoking Section 8(d) of the Trails Act, and permitting the transfer of CSXT's interest to the City and Radius by Purchase and Sale Agreements, allowing the City and Radius to create future trails.

66. Under Indiana law, because 1) Plaintiffs owned the land and the railroad held only an easement, 2) the railroad held only a right to operate a railway across the strip of land and the railroad did not have any right to sell or transfer the land to a non-railroad for public recreation or railbanking; and 3) whatever interest CSXT held in the right-of-way easement unequivocally terminated when the railroad no longer operated a railway across the strip land, Plaintiffs have suffered a taking for which compensation is owed. *See, e.g., Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708 (2011).

67. But for the STB invoking section 8(d) of the Trails Act, these Indiana landowners would have held and enjoyed unencumbered title and these owners would have had exclusive right to possess their property free of any easement for recreational trail use or railbanking.

68. These owners lost their right to unencumbered title and exclusive possession of their land when the STB invoked section 8(d) in February 2018.

69. The government's liability for a Fifth Amendment taking is defined by what the owner lost, not what the taker gained. *Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, (1910) ("And the question is, What has the owner lost? Not, What has the taker gained?")*; First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 321-22 (1987) ("a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change") (quoting *Pennsylvania Coal*, 260 U.S. at 416).

70. By action of the Trails Act and the Fifth Amendment of the Constitution, the invocation of Section 8(d) constitutes an uncompensated taking of the Plaintiffs' property. *Ellamae Phillips Co.*, 564 F.3d at 1373 (*Preseault II*, 100 F.3d at 1533).

71. Through application of the Tucker Act, the United States is obligated to pay these landowners "just compensation" for the land which the United States took without compensation. *Preseault II*, 100 F.3d at 1532. ("[W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government.")

72. "Just compensation" includes an award of delay damages dating back to the date of the NITU. The United States must pay interest calculated at the Moody's Aaa rate from February 28, 2018 until the United States Treasury actually pays each owner. *See Miller v. United States*, 620 F.2d 712 (Ct. Cl. 1980); *Pitcairn v. United States*, 547 F.2d 1106 (Ct. Cl. 1976); *Tektronix, Inc. v. United States*, 575 F.2d 832 (Ct. Cl. 1978), *cert. denied*, 439 U.S. 1048; and *Georgia Pacific v. United States*, 640 F.2d 328 (Ct. Cl. 1980); *Miller v. United States*, Court of Federal Claims No. 03-2489L (Order of August, 22, 2006), at *2; *Biery v. United States*, Court of Federal Claims Nos. 07-693L & 07-675L, 2012 WL 5914521, at *4 (Fed. Cl. Nov. 27, 2012); *Love Terminal Partners v. United States*, 126 Fed. Cl. 389 (2016); and *Sears v. United States*, 124 Fed. Cl. 730 (2016).

**COUNT II**
*An action for costs and expenses under the Uniform Relocation Act, 42 U.S.C. § 4654(c).*

73. Plaintiffs restate and reincorporates the allegations of Paragraph 1 through 72.

74. The URA requires the federal government to reimburse these owners the "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

75. Plaintiffs has incurred and will incur costs and expenses in this matter which the URA requires the federal government to pay and reimburse these owners.

**RELIEF REQUESTED**

For those reasons set forth above, this Court should enter an Order granting these Indiana landowners the following relief and order the federal government to:

A. Pay these owners the full fair-market value of that property the federal government took from these Indiana landowners.

B. Pay these owners compensation for the delay between when the government took the owners' property in February 2018 and the actual date when the government finally honors its constitutional obligation and pays these owners compensation for the land it took.

C. Reimburse these owners' litigation costs and attorneys' fees as provided in URA § 4654(c), which includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

D. Award such further relief as this Court may deem just and proper.

Dated: <u>April 5, 2024</u>                    Respectfully submitted,

                                          **LEWIS RICE, LLC**

                                        <u>*/s/ Lindsay S.C. Brinton*</u>
                                            Lindsay S.C. Brinton
                                            Meghan S. Largent
                                            Michael Armstrong
                                            T. Hunter Brown
                                            Lewis Rice LLC
                                            600 Washington Avenue, Suite 2500
                                            St. Louis, Missouri 63101
                                            (314) 444-7723
                                            (314) 612-7723 (fax)
                                            lbrinton@lewisrice.com

                                        ***Attorneys for Plaintiffs***